UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **MARLIN VOGEL** | **CIV. ACTION NO. 3:24-01274** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **HAL STANLEY JONES, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to remand [doc. # 15] filed by Plaintiff Marlin Vogel. The motion is opposed. For reasons assigned below, IT IS RECOMMENDED that the motion to remand be DENIED.

### Background

On June 28, 2024, attorney Gregory Egleston ("Egleston") sent an eighteen-page letter titled, "Shareholder Litigation Demand – Lumen Technologies, Inc.," to Kate Johnson, Lumen Technology, Inc.'s ("Lumen" or the "Company") President and Chief Executive, on behalf of Egleston's client, Marlin Vogel ("Vogel"), a Lumen stock owner. (June 28, 2024 Letter from M. Vogel to K. Johnson; Petition, Exh. A [doc. # 1-2]) (the "Letter"). The Letter served as a formal demand to Lumen's Board of Directors to investigate and commence legal proceedings against fifteen former and/or current directors, executive officers, and agents of the Company for breach of fiduciary duties, corporate waste, unjust enrichment, and violations of Sections 10(b), 14(a), 20(a) and 21D of the Securities Exchange Act. *Id*. The Letter detailed allegedly false and misleading statements made by Lumen and its senior management pertaining to the rollout and implementation of Lumen's Quantum Fiber brand, as well as their failure to disclose that Lumen faced potentially significant civil and regulatory liability from certain pre-1960 lead-sheathed copper telephone cables. *Id*. Each set of false and misleading statements provided

grounds for separate putative class actions against the Company and its senior management for violations of federal securities laws: *In Re: Lumen Technologies, Inc. Securities Litigation*, Civ. Action No. 23-0286 (W.D. La.) ("*Lumen I*") and *In Re: Lumen Technologies, Inc. Securities Litigation II*, Civ. Action No. 23-1290 (W.D. La.) ("*Lumen II*"). *Id*. Vogel, via Egleston, concluded the Letter by requesting the courtesy of a response within ten business days from receipt of the demand. *Id*.

     Vogel and his attorney never received a response to the Letter. (Petition; *see also* Decl. of Gregory M. Egleston; M/Remand, Exh. [doc. # 15-2]). Accordingly, at approximately 4:44 p.m., on September 13, 2024, Vogel, on behalf of Lumen, filed the instant shareholder derivative action, pursuant to Louisiana Revised Statute § 12:1-741, in the Fourth Judicial District Court for the Parish of Ouachita, State of Louisiana ("4th JDC"). (Petition [doc. # 1-2]; Foster Decl., M/Remand, Exh. [doc. # 15-3]). Vogel sued eighteen[1] Company directors and/or officers: Harvey P. Perry, Kate Johnson, Quincy L. Allen, Martha Helena Bejar, Virginia Boulet, Peter C. Brown, Kevin P. Chilton, Steven T. "Terry" Clontz, T. Michael Glenn, W. Bruce Hanks, Hal Stanley Jones, Michael J. Roberts, Laurie Siegel, and Glen F. Post, III, plus Chris D. Stansbury, Jeffrey K. Storey, Indraneel Dev, and Eric J. Mortensen (collectively "Individual Defendants"). (Petition, ¶¶ 14-32). Vogel documented the Individual Defendants' alleged roles in subjecting the Company to liability in *Lumen I* and *Lumen II*, plus two other tort class actions. *Id*., ¶¶ 255-278. In addition to an award of damages and other declaratory relief, Vogel prayed for judgment "[f]inding the Proxy Defendants [sic] for violations of Section 14(a) of the Exchange

---

[1] In his motion to remand, Vogel listed former senator, Mary L. Landrieu, as an additional defendant. (M/Remand, Memo, pg. 2 n.3). However, she does not appear in the Petition or on the docket sheet. *See* Petition [doc. # 1-2]. Furthermore, Alyssa A. Foster, an employee of Vogel's local counsel, Lundy, L.L.P., stated that the suit named *sixteen* Individual Defendants. (Decl. of Alyssa Foster; M/Remand, Exh. [doc. # 15-3]).

Act."  *Id.*, Prayer.

Although Vogel's attorneys filed the suit just prior to the close of business on Friday, September 13, the suit did not appear on the 4th JDC's online docket until the next business day, Monday, September 16, 2024, at approximately 8:34 a.m. (Foster Decl.; M/Remand, Exh. [doc. # 15-3]). In conjunction with the filing, Vogel asked the Clerk of Court to have the Sheriff serve "all" Defendants in accordance with the service instructions provided on pages 68-69 of the Petition. *Id.*[2] With the exception of Harvey Perry, for whom service seemingly was requested at his residence, Vogel instructed the Sheriff to serve the listed Individual Defendants "C/O Lumen Technologies, Inc., 100 Centurylink Drive, Monroe, LA 71203." (Petition, pgs. 68-69).

At noon, the next day, September 17, 2024, a sheriff's deputy attempted to serve the sixteen Individual Defendants for whom Vogel had requested service in care of Lumen, at Lumen's Monroe headquarters. *See* Citations, Foster Decl., Exh. 2; M/Remand, Exh. [doc. # 15-3]). However, the deputy returned the citations for each of the foregoing Defendants with an "X" marked in the box for unable to serve ("U.T.S") on the purported grounds that the "Home office is in Colorado." *Id.*

After 4:00 p.m., that same afternoon (September 17, 2024), Defendant, Hal Stanley Jones ("Jones") removed the suit to federal court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. (Notice of Removal [doc. # 1]). Over one week later, on September 26, 2024, a Sheriff's deputy successfully served Defendant, Harvey Perry, at his "residence," which was different than the original address provided by Vogel and his attorneys. *See* Citation, Foster Decl., Exh. 2; M/Remand, Exh. [doc. # 15-3]).

---

[2] However, the service instructions on pages 68-69 of the Petition did not include any instructions for serving Defendant, Glenn Post. *See* Petition, pgs. 68-69.

3

On October 17, 2024, i.e., the 30th day after removal, Vogel filed the instant motion to remand the case to state court on the grounds that Jones's snap removal of the suit "unconstitutionally usurp[ed] Louisiana's power to adjudicate its own issues in violation of the principles of comity and federalism, and in violation of the Tenth Amendment." (M/Remand, Memo., pg. 5).

On November 7, 2024, Jones filed his opposition to the motion to remand, emphasizing that the Court unquestionably enjoyed subject matter jurisdiction, via diversity, and that the forum defendant rule was inapplicable because service had not been perfected on any defendant prior to removal. (Def. Opp. Brief [doc. # 18]). Although Vogel made no mention of abstention in his opening brief, Jones interpreted Vogel's otherwise untethered basis for remand as "plainly" making an abstention argument, which Jones then refuted. *Id*.

Jones further asserted that in *Texas Brine Co., L.L.C. v. Am. Arbitration Ass'n, Inc.*, 955 F.3d 482, 487 (5th Cir. 2020) ("*Texas Brine*"), the Fifth Circuit considered but implicitly rejected arguments similar to Vogel's, i.e., that Louisiana's peculiar service-by-sheriff requirement denied plaintiffs the opportunity to preserve state court jurisdiction by serving in-state defendants prior to removal. *Id*. Finally, Jones asserted that Vogel's Tenth Amendment argument was meritless because the amendment provides that, "the powers *not* delegated to the United States by the Constitution . . . are reserved to the States." U.S. CONST. AMEND. X (emphasis added). However, Article III of the Constitution vests judicial power of the United States in one supreme court, and in such inferior courts as the Congress may from time to time ordain and establish, including, *inter alia*, in all cases between citizens of the different states. U.S. CONST. ART. III, §§ 1-2. Here, of course, jurisdiction is predicated on complete diversity of the parties.

On November 14, 2024, Vogel filed his reply brief, clarifying that his argument is that "snap removal, as used by Defendant Jones in this case, violates the Constitution and principles

4

of federalism and comity by utilizing improper gamesmanship and the federal law to usurp and/or override the State of Louisiana's powers to regulate its legal systems and procedures." (Pl. Reply, pgs. 1-2 [doc. # 19]). Vogel then asserted that he never conceded that this Court has subject matter jurisdiction. *Id*. Instead, he argued that Jones failed to establish diversity of citizenship because his allegations of citizenship were conclusory and not supported by evidence. *Id*.

Taking another cue from Jones's response, Vogel asserted that he could establish the need for a *Burford* abstention. *Id*., at pgs. 3-4. He added that, by failing to argue that service on the Individual Defendants was improper, Jones waived any argument that service of the Individual Defendants at Lumen's headquarters was somehow improper. *Id*., at pg. 5 n.1. Finally, Vogel again stressed that he was not challenging snap removals in general, but only how Jones employed snap removal in this case, i.e., by monitoring electronic dockets and then taking advantage of Louisiana's sheriff service requirement to have the home-state defendants circumvent the forum defendant rule by refusing service, resulting in the unconstitutional usurpation of powers reserved to the State. *Id*., pg. 7.

Briefing is long since complete. The matter is ripe.

## Analysis

A defendant may remove an action from state court to federal court, provided the action is one in which the federal court may exercise original jurisdiction. *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing 28 U.S.C. § 1441(a)). Furthermore, "civil actions filed in state court are generally removable to federal court *unless an Act of Congress expressly prohibits removal*." *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1118 (5th Cir. 1998) (emphasis added). The removal statutes are strictly construed in favor of remand. *Manguno*, 276 F.3d at 723 (citation omitted).

5

I. **Subject Matter Jurisdiction**

As always, the Court's analysis begins with subject matter jurisdiction. *Marquette Transp. Co. Gulf-Inland, L.L.C. v. Navigation Mar. Bulgare JSC*, 87 F.4th 678, 682 (5th Cir. 2023) (citing *Media Finance, LLC v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019)). "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 114 S. Ct. 1673, 1675 (1994). "They possess only that power authorized by Constitution and statute." *Id*. There is a presumption that a suit lies outside that limited jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). The burden of establishing the grounds for jurisdiction rests with the party who seeks the federal forum. *Settlement Funding, LLC v. Rapid Settlements, Limited*, 851 F.3d 530, 537 (5th Cir. 2017).

As stated previously, Jones removed this suit to federal court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. (Notice of Removal, ¶ 6). "All plaintiffs must be diverse in citizenship from all defendants in an action brought under the jurisdiction conferred by 28 U.S.C. § 1332(a)." *Farrell Const. Co. v. Jefferson Parish, La.*, 896 F.2d 136, 139-140 (5th Cir. 1990). Moreover, the amount in controversy must exceed $75,000. 28 U.S.C. § 1332.

 a) <u>Amount in Controversy</u>

When, as here, the state court petition seeks a money judgment, but state law does not permit a demand for a specific sum, then the removing defendant(s) may assert the amount in controversy in its notice of removal, which "should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87-88 (2014); 28 U.S.C. § 1446(c)(2)(A).

Here, neither Vogel, nor the Court contests or questions that the amount in controversy exceeds $75,000 in this case. Indeed, it is facially apparent that the type and quantity of damages sought by Vogel easily broaches the jurisdictional threshold. See Petition, Prayer.

b) Citizenship of the Parties

When jurisdiction depends on diversity of citizenship, "citizenship must be '*distinctly* and *affirmatively* alleged.'" *Getty Oil, Div. Of Texaco v. Ins. Co. of North America*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citation omitted); *see also*, *Illinois Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n.2 (5th Cir. 1983) (the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference).

In his Notice of Removal, Jones alleged that Plaintiff, Vogel, is a Hawaii domiciliary,[3] whereas Jones and the other Individual Defendants are domiciled in States other than Hawaii: Jones – *District of Columbia*,[4] Harvey P. Perry - *Louisiana*, Kate Johnson - *Colorado*, Quincy L. Allen – *New York*, Martha Helena Bejar - *Washington*, Virginia Boulet - *Louisiana*, Peter C. Brown - *Kansas*, Kevin P. Chilton - *Colorado*, Steven T. "Terry" Clontz - *Florida*, T. Michael Glenn - *Tennessee*, W. Bruce Hanks - *Louisiana*, Michael J. Roberts - *California*, Laurie Siegel - *California*, Glen F. Post, III - *Louisiana*, Chris D. Stansbury - *Colorado*, Jeffrey K. Storey - *Oklahoma*, Indraneel Dev - *Colorado*, and Eric J. Mortensen – *Colorado*. (Notice of Removal, ¶¶ 7, 9-22).

---

[3] For individual parties, the courts have equated domicile with citizenship. *Mas v. Perry*, 489 F.2d 1396 (5th Cir. 1974).

[4] For the purpose of diversity jurisdiction, the District of Columbia is considered a "State." 28 U.S.C. § 1332(e).

7

Last, but not least, there is Lumen itself, which is a Louisiana corporation, with its principal place of business in Louisiana.[5] (Notice of Removal, ¶ 8). Although Vogel characterized Lumen as an additional plaintiff in his Petition, Jones astutely observed that, in a derivative proceeding under Louisiana law, the corporation should be joined as a defendant. (Notice of Removal, ¶ 8) (citing La. R.S. § 12:1-742.1). Furthermore, when, as here, the corporation in a shareholder derivative suit is under the control of officers who are the target of the derivative suit, then the corporation should be aligned as a defendant. *Knop v. Mackall*, 645 F.3d 381, 382–83 (D.C. Cir. 2011) (citation omitted); *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 519 (1947); *Smith v. Sperling*, 354 U.S. 91, 97-98 (1957) (declining to realign the corporation in a stockholder's derivative suit as a plaintiff, where, on the face of the pleadings, management was antagonistic to the plaintiff stockholder). When properly realigned as a nominal Defendant, Lumen, too, is diverse from Plaintiff, Vogel.

Vogel contends that Jones failed to establish diversity jurisdiction because he did not provide evidence to support his allegations of citizenship. However, Jones distinctly and affirmatively alleged the citizenship of all the parties, which is all that he needed to do in the absence of a factual challenge to his jurisdictional allegations by another party or the court. *See Banks v. Liberty Ins. Corp.*, Civ. Action No. 21-3795, 2022 WL 770125, at *2 (W.D. La. Feb. 23, 2022), *R&R adopted,* 2022 WL 761710 (W.D. La. Mar. 10, 2022); *Employers Mut. Cas. Co. v. Gemini Ins. Co.*, Civ. Action No. 13-0816, 2014 WL 3541296, at *4 (M.D. La. July 17, 2014); *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936) (if allegations of jurisdictional facts are

---

[5] In diversity cases involving corporations, "allegations of citizenship must set forth the state of incorporation as well as the principal place of business of each corporation." *Getty Oil,* 841 F.2d at 1259 (citations omitted); *see also* 28 U.S.C. § 1332(c)(1).

challenged by his adversary or the court, *then* the party invoking jurisdiction must support them by competent proof).

Vogel proffered no grounds to challenge Jones's allegations of citizenship.[6] Likewise, the Court has no basis to question the parties' citizenship, as alleged. Accordingly, Jones was not required to provide supporting evidence for his jurisdictional allegations. *Banks*, 2022 WL 770125 at *2.[7]

The Court finds that it enjoys subject matter jurisdiction to entertain this suit, via diversity, 28 U.S.C. § 1332.

## II.  *Burford* Abstention

Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred upon them. *Grace Ranch, L.L.C. v. BP Am. Prod. Co.*, 989 F.3d 301, 313 (5th Cir.), *as revised*

---

[6] Certainly, Vogel does not suggest that he, in fact, shares common citizenship with any of the Defendants.

[7] The cases cited by Vogel are inapposite. For example, in *Rodgers-Tubbs v. Aldi Tex., LLC*, the court faulted the removing defendant for failing to provide proof of citizenship. *Rodgers-Tubbs v. Aldi (Texas) LLC*, Civ. Action No. 24-1846, 2024 WL 4394778, at *4 (N.D. Tex. Oct. 3, 2024). However, the removing defendant also failed to establish that the amount in controversy was satisfied and incorrectly conflated an individual party's citizenship with their residency, rather than their domicile. *Id*. Furthermore, the court cited *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 803 (5th Cir. 2007) for the proposition that a party "must offer more than conclusory statements," to establish citizenship. *Id*. In *Preston*, however, the proof of citizenship requirement arose in the context of the "local controversy" exception to the Class Action Fairness Act, 28 U.S.C. § 1332(d), where the *plaintiffs* have the burden of establishing the citizenship of proposed class members to *defeat* federal jurisdiction. *See Preston*, 485 F.3d at 803. Those circumstances are not present here.
   Vogel also cited *SXSW, LLC v. Federal Ins. Co.*, apparently for the unremarkable propositions that citizenship must be distinctly and affirmatively alleged and the citizenship of an individual is determined by the individual's domicile, not their residence. *SXSW, L.L.C. v. Fed. Ins. Co.*, 83 F.4th 405, 407 (5th Cir. 2023). Again, Jones's pleading complied with those requirements. *See* discussion, *supra*.

9

(Feb. 26, 2021) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). A federal court may abstain only in the rare instance when hearing a case *within its equity jurisdiction* would "be prejudicial to the public interest." *Id*. (citing *Burford v. Sun Oil Co.*, 319 U.S. 315, 318 (1943)). The *Burford* abstention doctrine permits federal courts to avoid entanglement with state efforts to implement important policy programs:

> [w]here timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*Grace Ranch, L.L.C.,* 989 F.3d at 313 (citing *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 361, (1989) ("*NOPSI*"). Because *Burford* abstention is an abdication of federal jurisdiction, it remains disfavored and "only rarely" supports abstention. *Id*. (citing, *inter alia*, *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996)).

Furthermore, "federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary." *Quackenbush*, 517 U.S. at 731. Accordingly, *Burford* abstention is "permissible only when the district court has discretion to grant or deny relief." *Munich Am. Reinsurance Co. v. Crawford*, 141 F.3d 585, 589 (5th Cir. 1998). While a derivative action historically has been classified as a suit in equity, it also may include a legal claim where the relief sought is money damages. *See Ross v. Bernhard*, 396 U.S. 531, 542 (1970).

In this case, Vogel seeks, in part, money damages, *see* Petition, which precludes application of the *Burford* doctrine. *Quackenbush*, 517 U.S. at 731; *Miller v. Miller*, Civ. Action No. 22-0335,

2022 WL 1397721, at *5–6 (W.D. La. Apr. 11, 2022), *R&R adopted,* 2022 WL 1321126 (W.D. La. May 3, 2022). Even, if not, application of the five-factor *Burford* test distilled by the Fifth Circuit propels the same outcome. The factors include:

> (1) whether the cause of action arises under federal or state law;
>
> (2) whether the case requires inquiry into unsettled issues of state law or into local facts;
>
> (3) the importance of the state interest involved;
>
> (4) the state's need for a coherent policy in that area; and
>
> (5) the presence of a special state forum for judicial review.

*Grace Ranch, L.L.C.,* 989 F.3d at 333 (citations omitted).

Vogel touched upon these factors in his reply brief by asserting that his cause of action arises solely under Louisiana law; it was unknown whether there were any "unsettled issues of state law," but there were local facts involving harms suffered in this State by citizens of this State, which, in turn, means that the State of Louisiana enjoys "a great interest in the outcome of this Action." (Pl. Reply Brief, pg. 4). In short, Vogel contends that the first three factors support abstention.

On the other hand, there is no indication that Louisiana requires a coherent policy in the area of shareholder derivative litigation or that there is any special state forum for such actions. Moreover, Vogel's argument pertaining to the forum state's interest in the matter may be found in the vast majority of federal court cases premised upon diversity jurisdiction. Finally, in *Grace Ranch, L.L.C.*, the Fifth Circuit held that abstention was not warranted, despite the fact that the first three *Burford* factors favored abstention. *Grace Ranch, L.L.C.*, 989 F.3d at 319. The same result necessarily obtains here.

**III.    The Forum Defendant Rule, Comity, and Constitutional Issues**

The federal removal statute includes a provision commonly referred to as the "forum-defendant rule";[8] it reads: "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added).  "[T]he forum-defendant rule is a procedural rule and not a jurisdictional one."  *Texas Brine*, 955 F.3d at 485 (citation omitted).

In *Texas Brine*, the Fifth Circuit recognized that, "[b]y its text . . . Section 1441(b)(2) is inapplicable until a home-state defendant has been served in accordance with state law; until then, a state court lawsuit is removable under Section 1441(a) so long as a federal district court can assume jurisdiction over the action."  *Texas Brine*, 955 F.3d at 486 (quoting *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019)); *see also Anaya v. Schlumberger Tech. Corp.*, No. 24-20170, 2024 WL 5003579, at *3 (5th Cir. Dec. 6, 2024) (unpubl.) ("As this court concluded in *Texas Brine*, § 1441(b)(2) is unambiguous and inapplicable until the defendant is served.").

Thus, the plain language of § 1441(b)(2), "creates an exception allowing removal by even a forum defendant prior to being served with process."  *Anaya v. Schlumberger Tech. Corp.*, 2024 WL 5003579, at *3.  This exception to the forum defendant rule is called "snap removal."  *In re Levy*, 52 F.4th 244, 247 (5th Cir. 2022).[9]  Furthermore, the Fifth Circuit has held that the text of § 1441(b)(2) unambiguously permits snap removals.  *Texas Brine,* 955 F.3d at 487.

---

[8]  *In re: 1994 Exxon Chem. Fire*, 558 F.3d 378, 391 (5th Cir. 2009).

[9]  "A snap removal is a term of art used to describe a defendant's proper invocation of § 1441(b)(2) to remove an action before a named co-defendant, who is a citizen of the forum, has been served."  *Id*.

12

In his Notice of Removal, and in his response to the motion to remand, Jones asserted that the forum-defendant rule was inapplicable because none of the forum-state Defendants were served prior to removal. (Notice of Removal, ¶¶ 22-24; Def. Opp. Brief, pg. 4). In his reply brief, Vogel stated that Jones waived any argument that serve was improper. (Pl. Reply Brief, pg. 5, n.1). Jones, however, plainly disputed proper service. *See* discussion, *supra*. Moreover, Vogel, himself, effectively concedes that service was not perfected against any forum-domiciled Defendant prior to removal because he did not seek remand under § 1441(b)(2). Even the sheriff's deputy checked the box indicating that he/she was unable to serve the Individual Defendants. *See* discussion, *supra*.

Instead, Vogel argues that Defendants improperly refused service when a sheriff's deputy attempted to serve the Individual Defendants at Lumen's Monroe headquarters. It is manifest, however, that neither federal nor state law permits service on an individual by delivering the papers to the person's workplace. *Landry v. Garber*, Civ. Action No. 19-0367, 2019 WL 5783369, at *3 (W.D. La. Oct. 18, 2019), *R&R adopted,* 2019 WL 5782873 (W.D. La. Nov. 5, 2019). Further, while Vogel alleges that the Individual Defendants were *agents of Lumen*, an "[a]gent for the service of process," under Louisiana law, "means the agent designated by a person or by law to receive service of process in actions and proceedings brought against him . . ." LA. C.C.P. ART. 5251(2).

Vogel, however, has not alleged, nor established that Lumen was authorized by law or by appointment to receive service on behalf of any Individual Defendant. *See Landry*, 2019 WL 5783369, at *3 (citations omitted). Accordingly, it is not surprising that Vogel did not succeed in serving the Individual Defendants by attempting to serve them "in care of" a distinct juridical person, i.e., Lumen. *See* LA. CIV. CODE ART. 24. ("The personality of a juridical person is distinct from that of its members."). Certainly, the Court does not infer any "gamesmanship" by Lumen, and/or

13

collusion with any other Defendant, in Lumen's refusal to accept service on behalf of someone for whom it has not been shown that it was authorized or appointed to do so.

Vogel also argues that the *Texas Brine* Court did not consider various issues pertaining to snap removal including the monitoring of electronic dockets, home-state defendants refusing service to thwart application of the forum defendant rule, defendants taking advantage of Louisiana's sheriff service requirement to snap remove a case, and the unconstitutional usurpation of State powers. However, as Jones pointed out, and as Vogel acknowledged, the plaintiff in *Texas Brine* made "gamesmanship" arguments similar to those advanced by Vogel, including a reference to Louisiana's service-by-sheriff requirement. *See Texas Brine*, Brief for Appellant, 2019 WL 359564, at *26-30 and n.4 (Jan. 22, 2019). Nonetheless, the Fifth Circuit effectively rejected these arguments and stated unequivocally that it "will not insert a new exception into Section 1441(b)(2), such as requiring a reasonable opportunity to serve a forum defendant." *Texas Brine Co.,* 955 F.3d at 487.

In his brief, Vogel emphasized that he was not asking the Court to insert a new exception to § 1441(b)(2) and was not concerned with the application of the forum defendant rule. (Pl. Reply Brief, pg. 7 and n.4). Rather, he was "objecting to the refusal of proper service on home-state defendants to foreclose application of the forum defendant rule and snap remove a case to unconstitutionally usurp the State's powers." *Id*.

Vogel's contentions are perplexing. On the one hand, he states that he is not concerned with the forum defendant rule; on the other hand, he states that Defendants' conduct foreclosed application of the forum defendant rule. However, this Court already has found no impropriety with Lumen's refusal to accept service on behalf of the Individual Defendants. *See* discussion, *supra*. Moreover, Vogel's arguments regarding delays inherent with Louisiana's service-by-sheriff

requirement and the unfair monitoring of electronic docketing prior to service are not really at issue in this case where the sheriff's deputy attempted to serve the Individual Defendants *before* removal. If Vogel had provided valid service addresses for the Individual Defendants, then the deputy may have succeeded in serving at least one Defendant prior to removal. In any event, the Fifth Circuit declined to insert a reasonable opportunity to serve a forum defendant exception into § 1441(b)(2). *Texas Brine,* 955 F.3d at 487.

Further, both the Fifth Circuit and this Court have considered and rejected motions to remand premised upon snap removals that were effected as early as one day after suit was filed and before the removing defendant, or any other defendant, was served. *See Anaya*, 2024 WL 5003579, at *1 n.2. (defendant removed the suit the day after it was filed and three days before service); *Hvamstad v. Nat'l Interstate Ins. Co.*, Civ. Action No. 22-1431, 2022 WL 17086690, at *3 (W.D. La. Nov. 3, 2022), *R&R adopted,* 2022 WL 17085936 (W.D. La. Nov. 18, 2022) (defendants removed the suit the day after it was filed and before any defendant was served). Whether a removing defendant discovers the state court filing by electronically monitoring the state court dockets or via some other means is immaterial. There is no technology carve out for the snap removal exception.

Vogel also appears to argue that Defendants' actions in this case are particularly egregious, thereby warranting a finding of exceptional circumstances. However, in *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, a case that the Fifth Circuit cited favorably in *Texas Brine*, the Third Circuit held that the forum defendant rule did not apply where, prior to suit, defense counsel advised opposing counsel that he would accept service on behalf of his client, but then after suit was filed, postponed accepting service so he could snap remove the case to federal court. *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 150 (3d Cir. 2018). Needless to say, plaintiff cried foul

15

and asserted that defense counsel's representation prevented plaintiff from taking steps to have the in-state defendant served by the sheriff in accordance with state law. *Id.* While the Third Circuit referenced defense counsel's arguably "unsavory" conduct, it nonetheless upheld the district court's denial of remand. *Encompass Ins. Co.,* 902 F.3d at 154.

Although not raised by the parties, another possible explanation for Vogel's reluctant and inconsistent reference to the forum defendant rule is that, by its terms, the rule does not apply when a civil action is removable on grounds other than § 1332(a). *See* 28 U.S.C. § 1441(b)(2). While Jones removed the suit on the basis of diversity jurisdiction, the action also was *removable* pursuant to federal question jurisdiction, 28 U.S.C. § 1331, because Vogel seeks a finding that the "Proxy Defendants" violated Section 14(a) of the Exchange Act, i.e.,15 U.S.C. § 78n(a),[10] a federal law. *See* Petition, Prayer. Although the Court does not exclude the possibility that Vogel's prayer for relief under the Exchange Act was a drafting error, Jones alleged facts to potentially support a claim for false and misleading proxy statements in the body of his Petition, and also cited Section 14(a) of the Exchange Act in his pre-suit demand letter, which he attached to the Petition. *See, e.g.*, Petition ¶¶ 179-181, 193-198 and the Letter. Accordingly, whether intended or not,[11] he sought relief under federal law, and the action was removable on grounds other than § 1332(a). Therefore, the forum defendant rule is inapplicable.

---

[10] "Section 14(a) of the Exchange Act creates an implied private right of action imposing liability for obtaining shareholder authorization for deceptive or inadequate disclosure in a proxy statement." *Welch v. Meaux*, Civ. Action No. 19-1260, 2022 WL 3273951, at *7 (W.D. La. June 15, 2022), *R&R adopted,* 2022 WL 3230571 (W.D. La. Aug. 10, 2022) (citation omitted).

[11] *See United States v. Davis*, No. 23-20475, ___ F.4th ____, 2025 WL 1417703, at *1 (5th Cir. May 16, 2025) (affirming dismissal of suit because attorney filed the petition on behalf of the wrong entity after mistakenly incorporating language utilized in another similar pleading).

Finally, Vogel advances a free-ranging argument that snap removal, at least as employed in this case, undermines the authority of the State and its courts to decide matters with strong local ties in violation of comity and federalism principles and the U.S. Constitution. Vogel stresses that the focus of this case is upon harms that occurred in Louisiana, impacting Louisiana residents, committed by eighteen directors and officers, four of whom are Louisiana citizens, on behalf of a Louisiana corporation, in violation of Louisiana law.

However, in his zeal to prioritize the State of Louisiana's interest in the matter, Jones downplays the countervailing authority and obligation of the federal courts to entertain matters that fall within their concurrent subject matter jurisdiction. Indeed, the Constitution provides that judicial power extends to all cases arising under the Constitution, laws, and treaties of the United States. *Madisonville Traction Co. v. St. Bernard Mining Co.*, 196 U.S. 239, 246–47 (1905). The Constitution also accords to the inferior federal courts the capacity to take jurisdiction in cases enumerated thereunder so long as there is an act of Congress conferring them with jurisdiction. *Kline v. Burke Const. Co.*, 260 U.S. 226, 233–35 (1922).

Relatedly, "[t]he power reserved to the states under the Constitution to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941). Consequently,

> [t]he exercise by the circuit courts of the United States of the jurisdiction thus conferred upon them is pursuant to the supreme law of the land, and will not, in any proper sense, entrench upon the dignity, authority, or autonomy of the states; for each state, by accepting the Constitution, has agreed that the courts of the United States may exert whatever judicial power can be constitutionally conferred upon them.

*Madisonville Traction Co.,* 196 U.S. at 255-56.

In addition,

> [t]he cases in the diversity jurisdiction involve rights created by a state, rights which are subject to definition, limitation and, frequently, negation by the state. The fact that the substantive right is a creature of the state, however, does not suggest that the state may deny the judicial power the states conferred upon the United States when they ratified the Constitution or thwart its exercise within the limits of congressional authorization. In determining its own jurisdiction, a District Court of the United States must look to the sources of its power and not to acts of states which have no power to enlarge or to contract the federal jurisdiction.

*Markham v. City of Newport News*, 292 F.2d 711, 713 (4th Cir. 1961). Stated differently, the removal statute remains "unaffected by local law definition or characterization of the subject matter to which it is to be applied." *Shamrock Oil & Gas Corp.*, 313 U.S. at 104. Hence, as an Act of Congress, the removal statute "must be construed as setting up its own criteria, irrespective of local law, for determining in what instances suits are to be removed from the state to the federal courts." *Id*. (citation omitted).

Applying the foregoing principles here, the undersigned observes that Congress, via the Constitution, has conferred this Court with subject matter to hear this matter between completely diverse parties and where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. While Congress has restricted the court's removal jurisdiction in diversity cases, 28 U.S.C. § 1441(b)(2), the limited circumstances of that exception are inapplicable here. *See* discussion, *supra*. The fact that Louisiana has a service-by-sheriff requirement that makes it difficult for plaintiffs to avail themselves of the forum defendant rule does not permit the federal courts to re-write, expound upon, or create a further restriction to the Court's exercise of subject matter jurisdiction in diversity cases removed from state court. That prerogative rests with Congress, and, to date, it has declined to exercise its authority to further limit the federal courts' removal jurisdiction to encompass the present facts. Until then, "the courts of the United States are bound to proceed to judgment and to afford

redress to suitors before them in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction."
*Chicot Cnty. v. Sherwood*, 148 U.S. 529, 534 (1893).

In light of the foregoing authority and analysis, Vogel is left with no viable constitutional, statutory, or procedural basis to support remand, which also effectively neuters his comity arguments. Regardless, however, it is manifest that Vogel has vastly overplayed his comity hand. It is uncontroverted that Vogel is a Hawaii domiciliary and that close to 80 percent of the Individual Defendants are citizens of states other than Louisiana. Furthermore, there is no indication that any of the forum Defendants, including Lumen, want to be in state court.

Moreover, while this suit was brought under Louisiana law on behalf of a Louisiana corporation, there already are at least four related derivative actions pending before this court. *See In Re: Lumen Technologies, Inc. Stockholder Derivative Litigation*, Master Docket No. 24-0798, consolidated with, Civil Action Nos. 24-1071, 24-1234, and 24-1320. Further, in at least one of cases, Civil Action No. 24-1071, the facts alleged are broad enough to support a claim under the same Louisiana law invoked by Vogel. *See* Compl., ¶ 158 ("Plaintiff has standing to bring this derivative action pursuant to La. R.S. 12:1-741"). Therefore, contrary to Vogel's suggestion, remanding this case to state court will not allow Louisiana's state courts to decide an issue of Louisiana law because the same issue already is being litigated here. Further, it will prove much more efficient to maintain this matter in federal court with the other pending derivative actions, which will have the concomitant benefit of reducing the risk of inconsistent judgments.

Finally, as the parties are well aware, this Court is intimately familiar with the challenged actions that form the basis for this suit and already has issued dispositive rulings on the underlying

claims.  *See Lumen I* and *Lumen II*.  In sum, rather than supporting remand, the interests of comity, federalism, and judicial efficiency strongly support maintaining this case before its current forum.

## Conclusion

For the above-assigned reasons,

IT IS RECOMMENDED that the motion to remand [doc. # 15] filed by Plaintiff Marlin Vogel be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 13th day of June, 2025.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE